SAUNDERS *et al. v.* LANIER *et al.*

(*Nashville.*  December Term, 1913.)

1. **ASSIGNMENTS FOR BENEFIT OF CREDITORS.** Sale of property.

In a special assignment in trust for creditors, a direction to sell "to the highest bidder either at public or private sale" imports a sale for cash, and, when the trustee and a preferred creditor assume to make a credit sale, they become absolutely responsible for the whole price. (*Post, pp.* 694, 695.)

2. **PRINCIPAL AND SURETY.** Discharge of sureties. Loss of other securities.

The security provided by a special assignment for creditors inured to the benefit of sureties on a note secured thereby, and, a portion thereof being lost by negligence of the payee in actively assisting to sell the the trust property, and taking in part therefor an insolvent note, or in making a credit sale at all, he, and not the sureties, must bear the loss. (*Post, pp.* 695, 696.)

Cases cited and approved: Renegar v. Thompson, 69 Tenn., 457; Allen v. Henley, 70 Tenn., 141; *In re* Cator, 82 Tenn., 408; Gillespie v. Darwin, 53 Tenn., 21; First National Bank v. Kittle, 69 W. Va., 171.

---

FROM DAVIDSON.

---

Appeal from Circuit Court, Davidson County.— THOS. E. MATHEWS, Judge.

LAURENT BROWN and ROBT. SADLER, for Saunders.

W. B. BALLARD, for Lanier.

Mr. Chief Justice Neil delivered the opinion of the Court.

Robert Lanier held a note of $550 on J. T. Pitt & Co., on which B. F. Saunders and W. T. Pitt were sureties. The sureties are sued in the present case, and they claim a credit of one-half of a note of $358 executed to George J. Thompkins, trustee, under the following circumstances:

J. T. Pitt & Co., being in failing circumstances, executed a special assignment to Thompkins on a stock of goods and other personal property valued at $915.40, together with a small number of *choses* in action, the latter valued at about $200. The assignment preferred the debt of Lanier and also a debt of $398.53 of Coleman & Thompkins, a firm of which the trustee was a member. The trustee, Thompkins, by and with the active connivance of Lanier, sold the personal property, exclusive of the *choses* in action, to the firm of Sevier & Markham, and took therefor two notes of $358 each. It was agreed between Lanier and Coleman & Thompkins, acting through Thompkins, that these two notes should be divided equally, or their proceeds, between Lanier and Coleman & Thompkins. One of these notes was executed by Sevier, with Clarence Jackson as surety, and was collected and applied. The other note was executed by Markham, without surety, and proved insolvent. The trustee and Lanier had the opportunity of taking for the goods and other personal property, except the *choses* in action, one note

for $716 signed by Sevier & Markham, with Clarence Jackson as surety thereon, which would have been a perfectly solvent note; that is, they had the opportunity of adopting a contract that had been made between J. T. Pitt & Co. and Sevier & Markham to give such a note, which had been assented to by Jackson and a note was so drawn and signed. For some reason, not fully explained in the record, they declined to take this note, but took two notes in the form already explained. Perhaps it was with the view of arranging the purchase price in equal amounts for division between Lanier and Coleman & Thompkins. This latter purpose seems to have been partially executed, but finally the whole matter of collection was turned over to Thompkins. However, as stated, Lanier and Thompkins took the insolvent note of Markham, and thus squandered that much of the security which the principal debtors, J. T. Pitt & Co., had provided by the special assignment.

In what has been said we have assumed that the assignment authorized a sale on a credit; but, in fact, no such direction or permission was given to the trustee. The direction was to sell "to the highest bidder either at public or private sale." This imported a sale for cash. When the trustee and Lanier assumed to make a credit sale, they became absolutely responsible for the whole price which the property brought.

Lanier has sued the sureties on the note without allowing any credit for any part of the $358 insolvent note so taken by him and Thompkins. The sureties

insist that they are entitled to a credit for one-half of this note.

We think this contention is correct. When the special assignment was executed by the principal debtors, for the benefit of the creditor, Lanier, the security thereby provided inured to the benefit of the sureties on the note. A portion of this security having been lost by the negligence of the creditor in actively assisting the trustee in making the sale of the trust property, and taking in part therefor an insolvent note, or, indeed, in making a credit sale at all, he must bear the loss, not the sureties. Under the agreement between the creditor, Lanier, and the trustee, Thompkins, acting for the latter's firm, Lanier was to have one-half of the proceeds of the sale. He would therefore be chargeable with one-half of the loss of the $358 represented by the insolvent note of that amount. A credit will therefore be entered on Lanier's note for one-half of the $358 note, and, after allowing other credits appearing on the note sued on, a judgment will be rendered in favor of Lanier for whatever balance may appear to be due.

The conclusion we have reached is fully sustained by the following authorities: Renegar v. Thompson, 1 Lea, 457; Allen v. Henley, 2 Lea, 141; In re Cator, 14 Lea, 408, 418; Gillespie v. Darwin, 6 Heisk. 21; First National Bank v. Kittle, 69 W. Va. 171, 71 S. E. 109, 37 L. R. A. (N. S.) 699, Ann. Cas. 1912D, 113, and note; 32 Cyc. 216, 217.